**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

| | |
|---|---|
| **VADELL C. JOHNSON** | **PLAINTIFF** |
| **V.** | **NO. 4:15-CV-23-DMB-DAS** |
| **KELVIN WILLIAMS, et al.** | **DEFENDANTS** |

## ORDER

This pro se prisoner action is before the Court for consideration of the Report and Recommendation issued by United States Magistrate Judge David A. Sanders, Doc. #13; and Vadell C. Johnson's motion for enlargement of time to object, Doc. #15.

## I
## Procedural History

On or about February 27, 2015, Vadell C. Johnson filed a pro se complaint in this Court against Kelvin Williams, Ora Starks, Gloria Westley, Joel Norvell, James Carmichael, "Ms. Tate," "Mr. Hogan," "Mr. Simpson," and "Ms. Golliday." Doc. #1. The complaint alleges the various defendants violated Johnson's Eighth Amendment rights by failing to provide him medical treatment for a broken hand.

On June 25, 2015, United States Magistrate Judge David A. Sanders held a *Spears*[1] hearing. On February 1, 2017, Judge Sanders issued a Report and Recommendation ("R&R") recommending that Johnson's Eighth Amendment claims against Tate, Hogan, Simpson, Norvell, Carmichael (collectively, "Prison Guards"), and Golliday be dismissed for failure to state a claim; and that Johnson's claims against Williams, Starks, and Westley be dismissed for failure to state a claim because § 1983 claims cannot be based upon a theory of "*respondeat superior*." Doc. #13

---
[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

at 7–8. The R&R warned that "[o]bjections must be in writing and must be filed within fourteen (14) days" and that a "failure to file written objections … within [such time frame] after being served with a copy [of the R&R] shall bar that party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court." *Id*. at 9 (internal quotation marks omitted). A copy of the R&R was mailed to Johnson on February 1, 2017.

No party filed objections to the R&R within fourteen days of its filing. Over nine months later, on November 20, 2017, the Court received from Johnson a letter advising of his change of address. Doc. #14. On December 1, 2017, the Court received a motion from Johnson asking for an enlargement of time to object to the R&R. Doc. #15.

## II
## Motion for Enlargement of Time

In his motion for enlargement of time, Johnson requests "thirty (30) days to file his objections due to him being an inmate of the Mississippi Corr. Fac. in Rankin County and by it being the holidays." Doc. #15 at 4. Johnson represents that he "did not receive the Court[']s Report & Recommendation from his former attorney until November 13, 2017," and that "he had no clue that the Court[']s Report existed." *Id*. at 3. In his letter to the Clerk regarding his motion, Johnson further represents that "[o]n November 13, 2017, I received a letter from my Attorney Azki Shah along with a copy of the Court[']s Report telling me I only had fourteen (14) days from the date of the Report to file objections … and that he would no longer be in a position to represent me." *Id*. at 1 (ellipsis in original).

Contrary to Johnson's representations, no counsel of record has appeared on his behalf in this case.[2] Johnson has proceeded pro se from the very beginning and, accordingly, each and every

---

[2] Johnson's motion requesting the appointment of counsel was denied on April 9, 2015. Doc. #8.

order or other document entered by the Court has been mailed to Johnson at his address on file, as updated by Johnson. Interestingly, Johnson does not explain how the attorney he references came to know of and/or receive the R&R. Given that Johnson has never had counsel of record, the Court must presume that Johnson received and/or was aware of the R&R before November 13, 2017, and communicated the fact of the R&R to such attorney. Under these circumstances, Johnson has demonstrated neither good cause nor excusable neglect to justify the enlargement of time sought. Accordingly, his motion for time to file objections to the R&R is denied.

## III
## Report and Recommendation

### A. Standards of Review

The R&R recommended dismissal of Johnson's claims under the screening provision of the Prison Litigation Reform Act ("PLRA"), which requires dismissal where a prisoner fails to a state a claim upon which relief may be granted. This recommendation implicates two standards of review—the standard for reviewing a report and recommendation and the standard for reviewing allegations under the PLRA.

### 1. Review of Report and Recommendation

Where objections to a report and recommendation have been filed, a court must conduct a "de novo review of those portions of the ... report and recommendation to which the Defendants specifically raised objections. With respect to those portions of the report and recommendation to which no objections were raised, the Court need only satisfy itself that there is no plain error on the face of the record." *Gauthier v. Union Pac. R.R. Co.*, 644 F.Supp.2d 824, 828 (E.D. Tex. 2009) (citing *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996)).

Under plain error review, the reviewing court reverses "only where there is 'error that is plain and that affects substantial rights.'" *Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 646 (5th Cir.

3

2004) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). Plain error must meet four requirements: "(1) an error; (2) that is clear or plain; (3) that affects the [party]'s substantial rights; and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Vasquez*, 216 F.3d 456, 459 (5th Cir. 2000); *see Douglass*, 79 F.3d at 1424. "Plain" is defined as "clear" or "obvious" under current law. *Crawford v. Falcon Drilling Co.*, 131 F.3d 1120, 1125 (5th Cir. 1997); *see Brown v. Bryan Cty.*, 219 F.3d 450, 466 (5th Cir. 2000). "'[A]ffects substantial rights' means that 'the error must have been prejudicial.'" *Brown*, 219 F.3d at 466 (quoting *Olano*, 507 U.S. at 734).

### 2. Review under PLRA

Pursuant to the PLRA, a "court shall dismiss [a] case at any time if the court determines that … the action … fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Dismissals under this provision are reviewed under the same standard as dismissals under Federal Rule of Civil Procedure 12(b)(6). *Legate v. Livingston*, 822 F.3d 207, 209–10 (5th Cir. 2016).

In considering the sufficiency of Johnson's complaint then, the Court must accept the facts alleged in the complaint as true and construe them in the light most favorable to Johnson. *Green v. Atkinson*, 623 F.3d 278, 280 (5th Cir. 2010) (per curiam). The Court must also accept as true Johnson's testimony at the *Spears* hearing. *See Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (*Spears* hearing "amplif[ies] the allegations in the prisoner's complaint" and therefore "becomes a part of the total filing by the pro se applicant"). Thus, Johnson's suit can only be dismissed for failure to state a claim if the facts, taken as true, do not "state a claim that is plausible on its face." *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This includes the basic requirement that the facts plausibly establish each required element for each legal claim. *Id*. at 681–83; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). However, a complaint is insufficient if it offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### B. Factual Background

On Friday, January 9, 2015, at about 5:30 p.m., Johnson broke his hand in a fight while housed at Bolivar County Regional Correctional Facility. Doc. #1 at 5. Correctional Officers Hogan and Tate witnessed the altercation. *Id*. at 6. Immediately after the fight, Johnson's hand "started hurting and swelling severely" and he "couldn't make a fist." *Id*. When he showed his hand to Officers Hogan, Tate, and Simpson, his "knuckle was clearly push[ed] back to [his] wrist [and his] hand had turned blueish purple." *Id*. at 5, 6. At the *Spears* hearing, Johnson stated that you could see that his hand was broken, which he repeatedly told and showed the officers, and that the officers refused to call the nurse during their shift and ignored his complaints. Doc. #13 at 5. Johnson asked to see the shift manager, Carmichael, who "examined [Johnson's] hand," told him it did not look that bad, told him to "tough it out," and refused to call the nurse. *Id*. at 2, 5.

At 11:00 p.m., shift manager Lieutenant White came on to the shift. After White examined Johnson's "bruised and swollen" hand, she called Nurse Golliday, who told her Johnson must wait until the next day for outside medical treatment because the emergency room did not have a bone specialist. *Id*. at 2. After Johnson insisted he needed medical care sooner, White called Golliday again. *Id*. Again, Golliday denied Johnson treatment. *Id*.

The following Saturday morning, Johnson pleaded for help from Lieutenant Norvell but Norvell initially would not look at Johnson's hand despite Johnson's persistent pleas for medical

5

attention. Johnson and the other inmates were confined to their cells the entire day, and no one responded to his requests for help. Doc. #13 at 2. When Norvell examined Johnson's injury through the cell window, he refused to call the nurse or send Johnson to the hospital. Doc. #13 at 2, 5.

That afternoon, Correctional Officer Butler came on to the shift and called Nurse Golliday. Golliday again "repeated there was nothing she could do because the bone specialist was not present at the hospital." *Id*. at 2. Only after Johnson asked Lieutenant Hall for help on Sunday did Hall call a different nurse, Nurse Haywood, who authorized Johnson to be taken to the emergency room. Doc. #13 at 2–3. At the emergency room, Johnson was referred to a bone specialist. *Id*. at 2. The following Wednesday, five days after Johnson broke his hand, Johnson met with the bone specialist, who reset his hand and placed it in a cast. *Id*. Johnson's hand did not heal properly. *Id*.

### C. Analysis

As mentioned above, Johnson alleges the defendants denied him medical care. The Fifth Circuit Court of Appeals has summarized its denial-of-medical-care jurisprudence:

> Prisoners are entitled to receive adequate medical care. A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain. A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.
>
> [T]here is both an objective and subjective standard. A prison official acts with deliberate indifference only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it. Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Delay in medical care can only constitute an Eighth Amendment violation if there has

6

been deliberate indifference that results in substantial harm.

*Rogers v. Boatright*, 709 F.3d 403, 409–10 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain … whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (internal quotations, citations, and footnotes omitted).

### 1. Claims against Prison Guards and Nurse Golliday

The R&R concluded that "[t]hree facts prevent Mr. Johnson from proceeding" against Tate, Hogan, Simpson, Norvell, Carmichael, and Golliday:

> First, neither Lt. Carmichael, the three guards who initially refused to call Nurse Golliday, nor Lt. Norvell believed the injury to be serious. The delay caused by the three officers and Lt. Carmichael was about five hours, and that caused by Lt. Norvell was no more than eight. None of these defendants had medical training. Johnson acknowledged at the *Spears* hearing that during this time he had access to ibuprofen through Lt. White and other inmates. Second, none of the guards on the other shifts can be held liable, as they are not medically trained, and they actually tried to get Johnson treatment by seeking approval from Nurse Golliday. Finally, Nurse Golliday never actually examined Johnson in person, so she relied only on the guards' verbal descriptions to assess how serious Johnson's injury was. Based on the descriptions, she delayed Johnson's treatment because the bone specialist was unavailable.

Doc. #13 at 6–7. Additionally, regarding these claims, the R&R states:

> even if these five defendants had called Nurse Golliday – and she had approved taking him to the emergency room – the treatment he would have received would not have relieved his pain. In addition, he has not alleged that the combined thirteen-hour delay caused him substantial harm.

*Id*. at 7. The Court addresses each basis for the R&R's recommendation regarding the claims against the Prison Guards and Golliday.

7

*a. No belief of serious medical need*

The R&R first concluded that Johnson's claims against the Prison Guards and Golliday must fail because none of them believed Johnson was suffering from a serious medical need. However, this finding impermissibly draws inferences in favor of these defendants. Based on the facts pled, the Court must "draw the reasonable inference that the defendant *is* liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (emphasis added).

A serious medical need "is one for which … the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). The R&R seems not to question that a broken hand is a serious medical condition. *See* Doc. #13 at 6 ("Decision in this case does not rest on the severity of Johnson's injury. His hand was broken, after all, and the court has no doubt that he was in pain."). Indeed, federal appellate courts have held that broken bones resulting in severe pain are a serious medical need.[3] Such is the case here as to Johnson's broken hand.

Construing the facts alleged in Johnson's favor, the Prison Guards knew Johnson broke his hand (since they examined its noticeably broken state) and knew Johnson was in severe pain but ignored his complaints and requests for medical treatment. Johnson's allegations, if true, could support an inference of deliberate indifference on the part of the Prison Guards. *See Coleman v. Sweetin*, 745 F.3d 756, 765 (5th Cir. 2014) ("Assuming, as we must, that the facts alleged in the complaint are true, Erwin and Fisher ignored Coleman's complaints and pleas for help. We must reverse the dismissal of these defendants and remand for further proceedings."); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (reversing district court's dismissal of claims against defendant who told plaintiff to 'man up' when he asked for his pain

---

[3] *See Sears v. Gusman*, No. 16-2935, 2016 WL 4991539, at *2 (E.D. La. Aug. 31, 2016) (collecting cases), *adopted by* No. 16-2935, 2016 WL 4942845 (E.D. La. Sept. 16, 2016).

medication). Thus, the Court finds it was plain error to infer that the Prison Guards did not believe Johnson's injury was serious.

### b. Length of delay

Delay in the provision of treatment is of course relevant when a claim is premised on delay in the provision of medical care. *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006). Johnson alleges that the Prison Guards and Golliday denied him treatment entirely, which is sufficient to state a claim under the Eighth Amendment. *Coleman*, 745 F.3d at 765. Even if delay was considered, the Fifth Circuit has held that a four-hour delay in treatment may provide grounds for liability. *See Easter*, 467 F.3d at 461. Accordingly, it was plain error to infer that the five- to eight-hour delay in Johnson's receipt of treatment prevents Johnson's claims from proceeding.[4]

### c. Lack of medical training

Because the record does not support the finding that the Prison Guards lack medical training, such conclusion in the R&R is rejected. Regardless, it does not take an allegation of medical training for the Court to infer that the Prison Guards knew Johnson broke his hand in the fight based on the facts Johnson pled. *See Coleman*, 745 F.3d at 765 (plaintiff's allegations suggest defendants became aware of his serious medical needs when plaintiff "informed them during lockdown that he had fallen multiple times, his right hip was broken, and he was unable to move his leg, lie in bed, or use the toilet").

### d. Access to ibuprofen

Johnson's sporadic access to ibuprofen does not bar his claim against the Prison Guards.

---

[4] The R&R also infers that because Golliday "had already denied many requests for [Johnson] to go to the hospital, it is unlikely that she would have changed her mind based upon another call from a prison guard." Doc. #13 at 7. The Court cannot agree with this sweeping inference against Johnson. The Prison Guards may have been able to convince Golliday to change her mind, call another nurse (which is what ultimately happened), or assist in other ways. *See Alderson*, 848 F.3d at 423 n.9 (prisoner pleads plausible claim even when it unclear whether defendant had authority to call medical staff or had other means for assisting prisoner).

When the Prison Guards refused to call the nurse, Johnson had no ibuprofen. Lieutenant White gave Johnson ibuprofen only when she came onto the shift after the Prison Guards' shift ended. Additionally, Johnson alleged he was without ibuprofen for the entire day when Norvell was on the shift, and there is no allegation the Prison Guards knew Johnson had ibuprofen. It would therefore be impermissible to infer such as the reason for their refusal to call the nurse. Finally, to the extent the R&R inferred no deliberate indifference because the emergency room ultimately treated Johnson with ibuprofen, such must be rejected because the provision of ibuprofen was not the only medical treatment Johnson received—the emergency room staff immobilized Johnson's hand, prescribed him ibuprofen, and referred him to a bone specialist. Given the Prison Guards' knowledge of Johnson's broken bone and their refusal to call the nurse, Johnson's sporadic access to ibuprofen does not alter the deliberate indifference conclusion above.

### e. Liability of other guards

The liability of other guards is irrelevant to Johnson's claims against the Prison Guards and Golliday. Accordingly, the Court rejects this finding.

### f. Golliday's reliance on guards

The R&R concludes that Nurse Golliday "could not have known how serious Johnson's injury was because she could not see it" and that basing her medical assessment "on verbal description given over the telephone" is "an act sounding in negligence," which "shield[s] against a finding of deliberate indifference." Doc. #13 at 8. This Court disagrees.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015) (citing

*Farmer v. Brennan,* 511 U.S. 825, 842 (1994) (internal citation omitted)). Because of Nurse Golliday's calls with White and Butler, it is certainly plausible she knew Johnson's hand was broken. *See, e.g., Estate of Henson v. Krajca*, 440 F. App'x 341, 345 (5th Cir. 2011) (determining nurse's deliberate indifference based on her response to phone reports she received). Construing Johnson's complaint liberally, White and Butler could have given Golliday enough information to conclude Johnson broke his hand in the fight. Johnson's allegation that Golliday believed he needed to see a bone specialist also suggests Golliday knew Johnson had broken his hand. Doc. #13 at 6–7. Even if a bone specialist was not available at the emergency room, Golliday may have been required to provide medical treatment to Johnson if she knew he needed it. *See Alderson*, 848 F.3d at 422 n.6 (Christmas holiday did not justify denial of prescription for week when staff had knowledge medication needed to be administered). Accordingly, the Court finds plain error in the R&R's finding that Golliday was not aware of Johnson's serious medical need.

### g. Potential efficacy of treatment

The R&R offers no support for its conclusion that the provision of treatment would not have alleviated Johnson's pain. The Court rejects this conclusion.

### h. Substantial harm

As explained above, Johnson alleged that the Prison Guards and Golliday ignored his requests for medical attention and that these acts caused him substantial harm in the form of extreme pain. This is sufficient to state a claim for substantial harm under the Eighth Amendment. *Coleman*, 745 F.3d at 766 (extreme pain qualified as substantial harm). Accordingly, the Court rejects the R&R's conclusion that Johnson did not plead substantial harm.

### i. Summary

In sum, the Court finds plain error in the recommendation that Johnson's claims be

dismissed against the Prison Guards and Golliday. Johnson's allegations against these defendants are sufficient to state a claim for inadequate medical treatment under the Eighth Amendment.

### 2. Claims against Williams, Starks, and Westley

The R&R recommends that Johnson's claims against Williams, Starks, and Westley be dismissed because § 1983 claims cannot be based upon a theory of "*respondeat superior*," as Johnson failed to allege these defendants "had any personal involvement or were causally connected to the alleged incident in any way." Doc. #13 at 8. Having reviewed the R&R in this regard, the Court finds no plain error in this recommendation.

## IV
## Conclusion

Based on the above:

1. Johnson's motion for enlargement of time [15] is **DENIED**.

2. The Report and Recommendation [13] is **ADOPTED in Part and REJECTED in Part** as follows:

    a. Johnson's claims against Williams, Starks, and Westley are **DISMISSED** for failure to state a claim; and

    b. Johnson's Eighth Amendment claims shall **PROCEED** against Tate, Hogan, Simpson, Norvell, Carmichael, and Golliday.

**SO ORDERED**, this 3rd day of January, 2018.

                                                       /s/Debra M. Brown
                                                       **UNITED STATES DISTRICT JUDGE**